Good morning. My name is Steve Dawson, and along with Anita Rosenthal, we represent Dr. Philip Seltzer, who is the plaintiff below and the appellant here. The issue that is presented by Unum Insurance Company's argument in this case, that the statute of limitations began running on Dr. Seltzer's claims in 1986, really is, what could Dr. Seltzer have sued for in 1986, had he chosen to do so? Both in terms of what would the basis of his lawsuit have been and what would the damages have been that he would have or could have sought. The conduct that Dr. Seltzer alleged in the lawsuit that we filed to have been bad faith on the part of Unum had not yet occurred in 1986. In 2009, when we filed the lawsuit, the allegation was that Unum had not fairly and objectively considered all of the medical information that had come in over the course of his claim. Dr. Seltzer's claim, and that specifically, Unum had not given fair and objective consideration to a diagnostic test that had been done in MRI in 1991 on Dr. Seltzer, which Unum's claims people admitted in deposition was consistent with a specific onset of his disability, which was consistent with injury or accident, not illness. Maybe more important than that, had Dr. Seltzer nonetheless chosen to file a lawsuit in 1986, what would he have sued for? In Arizona, there is case after case that sets out the proposition that a plaintiff's damages must be certain, they must be non-speculative, immediate, and more than the threat of future harm. That would be a little tough for you to say you don't have anything to sue about when, one, if you characterize something as an accident, you get damages for a long time, but if you characterize something as sickness, you don't. And he knew about that in 1986 when they came out there and said, here's what you're going to get, sign on. In 1986, as Unum continues to argue, they unequivocally classified disability. I understand. But that, I mean, from the time the clerk gets there, out there to see him, and then gets to the point where it's classified, it seems to me he's walking, walking, walking past the opportunity to do anything. But in 1986, keep in mind that he has 23 years before there will be any consequence from the classification, assuming the classification doesn't change over the 23 years as they're handling this claim. Unum knows at the point in time that they've done this. In 1981 is when Dr. Seltzer goes on claim. In 1981, Unum has him examined by a doctor of their choosing, and that doctor says a couple of things, both that doctor and the in-house doctor at Unum. One, we'll probably never know whether there was sudden onset or not, but we're going with the position that it was more of a systemic problem. Secondly, I don't know how long his disability is going to go, whether it's going to last for a few months or longer. I can't answer that right now. So with these questions up in the air, I think to foster or promote a policy that would require somebody in Dr. Seltzer's position, when he's a young man, to bring a lawsuit over something that might, depending upon a number of contingencies, have a real-life impact on him 23 years later, is inconsistent with the Arizona Supreme Court and Arizona Court of Appeals holdings for statute of limitations. What was the Arizona holding that you think is closest to this situation? Actually, there are a few cases that come to mind in terms of being closest to this situation. One of the most recent was Judge Martone in the Federal District Court, who used to sit on the Arizona Supreme Court, had held in a 2009 decision that we cited that even though in that case there was an unequivocal denial of a claim, the damages were not certain. There was still certain speculation as to what the damages would be. And I cite that case because Judge Martone was citing the CDT, Inc. v. Addison-Roberts-Ludwig case. That case, I think, is the culmination of what had been happening in the Arizona courts beginning at least back with the AmFac I and AmFac II decisions where they were looking at legal malpractice claims. This Court, in the Manzanita Park decision, had the same kind of view as the AmFac I decision, applied the AmFac reasoning to a lawsuit against an insurance agent and an insurance company there to, again, make the point that the cases were not unique in the legal malpractice setting, that the principles that damages should not be speculative and contingent upon something else happening in the future would apply to any cause of action. But at least, this may be confusing the cases, at least some of the cases, and I'm trying to rummage through and find them. There were some cases that went to the issue of amount required for jurisdiction, Federal jurisdiction. Is Judge Martone's case one of those? No. No. Judge Martone's case was the defendant insured in the case had brought a motion to amend to add a counterclaim against the insurance company. And the insurance company argued against the motion to seek leave to amend. The statute's run. So that was Judge Martone's case. So he held the statute had not run. He held the statute had not run, that even though the denial was unequivocal two years, more than two years before, damages had remained speculative and not certain, and that the statute did not commence running until that happened. And I obviously respect Judge Martone's experience, because he was a justice at the State Supreme Court. But we are bound by – this strikes me as a purely State law question. Do you agree with that? Absolutely. And part of my struggle here is that I can make a rationale, rational argument either way. There are policy reasons it can be cited, but I'm having real trouble figuring out what Arizona State law is here. And so that's why I pose the question, okay, based on what we can rely upon, what's the flag I should try to reach out and grab? Fair enough. Let me kind of cleave it into two parts, because I think one has to in analyzing the statute of limitations issue. As for the first part, I think the case that is most applicable is the Ness holding, which both sides cite in their briefs. That's Ness v. Western Security Life Insurance case. It's a 1992 court of appeals decision. In that case, it, too, by the way, was a disability claim, though I think a credit disability. The insurance company denied the claim. They stopped making payments. So right away, that's a distinction that really shouldn't go unnoticed. You had an arguable breach by nonperformance, which we don't have here. There was not a breach by nonperformance. They continued making the monthly payment each and every month and each and every  year. The insured's lawyer wrote the insurance company and said, you've denied this in bad faith. Lawsuit doesn't end up getting filed for more than two years thereafter. Statute of limitations is two years. Court of appeals held, though, that the statute had not commenced to run because the insurance company's response to the lawyer's letter that you've acted in bad faith was to essentially start negotiations and, as the court of appeals put it, held out some hope that there might be a different decision. As I recall, I looked at Ness, and that had more to do with where the clock started ticking in terms of how the parties behaved, not in terms of whether there was – I mean, in this case, I don't see any uncertainty in the party's position that would invite the application of Ness. The real issue is parties' positions are clear. They might be changed if something later develops. But there's no uncertainty. Your client clearly knew. Indeed, your client signed an acknowledgment knowing what the insurance company's position was and knew exactly what the effect would be if he lived that long. But we're always talking about claims over time, the possibility of breaching out many years. So I'm not sure that Ness says, look, if the clock didn't clearly start ticking, fits this pattern very closely. Well, Judge Clifton, I submit that it does, and let me try to explain why that is. We had a lot of clarity on this when we did the limited discovery we did before the motions were brought. The people at Unum testified. In fact, their claim manager sort of interrupted a question and said there was no decision. Back in 1986, it was a coding. We coded it accident as opposed to illness. Keep in mind that there's one claim here. There's one definition of total disability. There's one premium, one benefit amount. You get one check. But we coded his claim as accident as opposed to illness. There was no decision. So you go back to the Arizona cases, and right away they say there must be a final, unequivocal denial or decision. That hadn't even happened yet. There was a coding or a classification. And as the claim manager went on to explain, why would we? Anything could happen. He said over the course of 29 years. It actually was 23 years that had to unfold. And they also admitted that in 2009, when Dr. Seltzer brings this up to their attention again, and he had from time to time over the course of the claim, but now he's in the year that he's going to turn 65. They said we had a duty to evaluate the whole picture, whether this was a result of accident or illness. We had a duty to look at it, and we had a duty to do it in a way that was consistent and good faith and fair dealing. The Applees say the same thing in their brief. But somehow they're trying to end up with a result that they have a duty and obligation to give him equal consideration in looking at the whole medical record now that's developed over all those years. And importantly, in our opinion, the most important record, it didn't happen until 1991 when he had the MRI. And this was the first time they really considered that after he asked them to look at it in 2009. But that if they do that in bad faith, he has no cause of action. You, if I could, you've spent a lot of time in what I characterize as the characterization of the disability. I'd like to change to the loss of use provision. All right. Which in your brief is kind of at the end and thrown in with a couple of sentences, but it intrigued me just a little bit. Did you ever make a demand on the defendant for payment under the loss of use provision? No. I don't think that the loss of use provision that Dr. Seltzer, that he was aware of that provision in his policy. It was us as attorneys looking at his policy and looking that there was a doctor who had expressed the opinion earlier on that he had suffered the unrecoverable loss of use of his hands in his profession.   I think that's the first time I've seen that. Was that claim identified in the complaint? Yeah. That was the second one. Where do you make that argument in your complaint? You know, there's a — and I apologize. I meant to go back and look at that before this morning. There was a general sort of a catch-all allegation in the complaint. It was not identified specifically in the complaint. Well, as I understand it, reading it pretty closely, the first time I see it at all is in a response brief on summary judgment. I think before the first time — well, the first time it was specifically raised, if not in discovery, to the court, was in the response brief on summary judgment. Did you ever move to amend the complaint? We did not move to amend the complaint. Does the district court ever address the argument? No. Though we argued it, the district court didn't address it. I did want to reserve some time, and I'm down to a minute, so I should do that. May it please the Court. Lawrence Kasten for the appellees. Good morning. Let me talk first about the Ness case. The Court asked what Arizona law, what the Arizona case was that plaintiff relied on. And I think that the Ness case is a classic example of what some of my law partners call the Westlaw effect. It's the using word searches in Westlaw to find a snippet of a case that maybe sounds helpful, but in the process, missing the entire meaning of the case. The problem in Ness was that the insurer attempted to claim that the statute of limitations had started, even though it kept on holding out the prospect of accepting the claim to the insured. And the specific issue that was being discussed is the insurer said, well, since plaintiff, or since claimant, you are unemployed, we need to know what kind of jobs you're qualified for before we can make a disability determination. Nothing like that ever happened here. Paul Revere classified this, classified the condition as a sickness in 1981, and it never wavered since. Let me talk a little bit about the argument that the classification, that the benefits director didn't actually testify that a decision was made in 1981. He did so testify. He did so unambiguously. This is page 244 of the excerpts. He testified the decision in 1981 was that Dr. Seltzer's claim was due to a sickness. That's his testimony. It's also the testimony of Ms. Emboden, the field representative that went out to the House in 1986. The fact is that the decision that was made in 1981 was not a hard one, but it was a decision nonetheless. The facts that the company had before it, it had a letter from the company. Was it a final decision? Absolutely, Your Honor, and it never changed. You know, you make the word final, I assume, is in there for a reason, that it's more than a decision. It has to be a final decision. Did he ever testify that it was a final decision? The word final doesn't appear in the testimony, but he does then. But it does in the contract, or in the insurance agreement. Again, Your Honor, I'm sorry. It does in the insurance agreement? It doesn't have the word final in the letter that's written in 1986. And the truth is. Your client would have been open to, if evidence had come in that pointed to a different result, your client sort of obligated to consider that evidence. Absolutely, Your Honor, because the policy, once the disability is accepted, there's a waiver of premium. So the policy continues in force. And so if something had changed, if he'd gotten better, or if something else had happened, but that's different from what's required for statute of limitations. Why isn't it different? Those kind of uncertainties are always present. And they're present today with respect to the complaint that they filed in 2009. The uncertainties that we're talking about here are that there could be new evidence, that the – that his condition might change, that medicine might change. Those kind of uncertainties exist even today. And the fact that he's not going to get better. Didn't he make a final decision at the time that he reached his, whatever it was, 65th birthday, and then he decided whether to continue his benefits or not, after you've reviewed all the new evidence, and indeed invited him to appeal, and then made a decision, and then would cut off his benefits? Well, there was no invitation, Your Honor. He, as he approached retirement age, he said – and it's interesting to note what he said at the time. This is in 2009. He writes a letter and he says, you didn't make a classification back in 1981. Please do so now. And the company's response is, not only did we do it, we even did more than send a letter. We sent a person to your house to make sure you understood what the classification was. And at that point, he calls in, and I think the claim handler's note says something to the effect of, well, I was on medication at the time. But that was the claim that he made in 2009. Then how did he come to appeal? Did you tell him that he could appeal that decision? He sent in a letter, and the company decided to consider it at the time that he made it in 2009. It wasn't an appeal. It was a letter that he wrote. And he said, please, please reconsider my classification. He didn't use the word reconsider. Please say that this was an accident, not a sickness. And the company elected to do so. It's a pretty significant catch-22 if the company declines to do so because it will almost certainly get sued for bad faith. So if the argument is that by entertaining a reconsideration request 30 years after a claim, that resuscitates the statute of limitations, effectively, that would be holding that there is no statute of limitations in a disability case. Go ahead. I was going to say, isn't it true that the payments for sickness or accident are the same? They are the same, Your Honor. And isn't it true that Paul Revere began paying the payments without ever specifying whether it considered the plaintiff's disability due to a sickness or an accident? No, it's not. You're in 1986. It's specific. No, no. When they started paying the benefits. There's nothing in the record that I can see that says this is for sickness, not accident. But remember, Your Honor. And then I didn't find anything before 2009 where Paul Revere ever wrote a letter saying this is for sickness. So we're down to a conference between an investigator and the plaintiff. And I don't know if there's anything in the record that results in a writing, a notarized writing that specifically says, where Dr. Seltzer says, I understand that this claim is for sickness, not accident. That's the excerpts at page 90. So my worry is when I read her deposition, I'm wondering if I can find that she merely explained that was what they were going to do, but she didn't say that's the end. There's a – well, she didn't remember in her deposition. And, of course, that's only natural. I understand. And it's one of the reasons we have the statute of limitations in the first place. But her field note at the time says that Dr. Seltzer understood the significance of the sickness versus accident determination and that they spoke about some of the medical evidence. And specifically, the medical evidence that they spoke about was the treating physician's letter that is submitted to Paul Revere in 1981 that describes the condition as, quote, probably a slowly progressive thing. The problem that I have when I read what she says and I read her deposition, it seems a little worried that she says to somebody who's her supervisor, I expect, I will allow you to use your judgment as to whether a follow-up letter need to be sent, and it never was. I think it's a different case if the notarized statement doesn't occur. I think that it's a pretty telling document. I think it's better than a letter because often in a statute of limitations, a cruel case, one can argue what did the defendant understand or not understand. Here, you not only, it's not when did you read the letter, when did you receive the letter. He signs a statement saying, here's my understanding of the classification. And let me talk about that. It's a wrinkle that I think gets lost a little bit in this case. In the typical case, a disability case, we're talking about a denial of a claim. And so the statute of limitations question is, when did the insured know or should he have known that his claim was denied? Here, the claim was accepted. And so the statute of limitations question is, when did the insured know or should he have known about the classification? And clearly, it's undisputed that he knew about it in 1986. He signed a statement. It wasn't that that was not a final determination because the company understood that it would consider any further medical evidence that came in between then and the time he reached 65. It was a final determination from which it never wavered. No, of course, it never wavered because it didn't feel that it had received the kind of medical evidence that would make it change its mind. It was a decision subject to there being no further evidence. And at the time the time a final decision was made was when he reached 65 because it had not received any evidence that would change its tentative decision. That will be true in every disability case, Your Honor, because the company will be under a continuing obligation if the plaintiff comes forward. But what's unusual here is what you just pointed out. Benefits were being paid. If benefits are denied, then the loss is immediate. The claim is clearly accrued. In this case, the claim doesn't accrue in terms of any actual loss to the plaintiff until he turns 65 some years in the future. I'm kind of in the same place I was a few minutes ago with this question of State law, what would you identify as the Arizona cases that should shed the most light on this for us? I think the very cases the plaintiff cited, the Taylor and the Amfat cases, and there's a case from this Court called, let's see, I can't remember the name of the case. It was applying Ninth Circuit law, but in those cases the Court always uses the disjunctive. It talks about injury or damages. There's another case that was decided just a few months ago that we identified in a Rule 28J letter, the Best Choice case, and the Court makes clear there that what it's talking about, you don't need actual damages, you need a legal harm for the statute of limitations to start accruing. And in that case, the Court even said, even if it's possible that damages might be eliminated in the future, there may be no damages. That was a case where the Department of Insurance suspended a certificate and there were ongoing proceedings about whether that suspension would hold. And the Arizona Court of Appeals said the cause of action accrues for statute of limitations purposes at the time the original decision was made, notwithstanding what might happen in the future and notwithstanding the fact that there may never be damages. On the point that there was no injury in 1981, there surely was. There was a real consequence to Mr. Seltzer. He had a much less valuable benefit than he would have if it had been classified as an accident. And it affected how he would have to plan for retirement, how he would have to arrange his financial affairs. It's no different from a promissory note case. If the debtor gives a note that requires a balloon payment in 15 years and says, you know, I don't think a condition precedent was met, I'm only going to pay you $2 million instead of $1 million, there would be no requirement under Arizona law to wait 15 years to bring the lawsuit, because that announcement has a real – it's a legal harm that occurs at the time that that statement is made. Should the question be certified to the Arizona Supreme Court? I would think – I think that the cases are clear enough that it need not. The implication in this case, if this Court were to accept plaintiff's position, essentially would be that we're going – consider the implications, Your Honor. We're going to allow 50 cases to be brought 50 years after accident-sickness determinations. You could have a plaintiff today who is 21, and if a claim were classified as a sickness, not an accident, under plaintiff's position, that case wouldn't need to be brought until the year 2056. And under a 6-year statute of limitations, 2062. If – I think the – if Arizona courts are going to be having 90-year-old doctors testifying about documents they created on mimeograph machines or on carbon paper, certainly the Arizona Supreme Court might want to weigh in on what's going on in its courts, given that there isn't a clear case. I would urge the Court, though, to look at that best-choice case. I'm sorry that it came up at such a – at such a late time. Kennedy, you think that if we were inclined to rule against you, it should be certified to the Arizona court? Certainly, if the Court were to be inclined to rule against us on the ground that – that this reconsideration request that was made in 2009 resuscitates a 28-year-old statute of limitations, absolutely. That's not a question that there's an Arizona case on point about and – and certainly one that it might want to weigh in on. Although I would say we did cite a case from the Supreme Court on that point at page 21 of our briefs. That's the Ricks case. And what the Court in that case said was that a request to a grievance procedure, a reconsideration of a tenure decision, didn't start the statute – restart the statute of limitations. It's a civil rights case. It is, Your Honor, but it's the policy that was important, because what the Court was saying was we don't want to discourage this kind of grievance. And that's exactly what one would do if you held that – that by entertaining reconsideration, you resuscitate the statute of limitation. You'd be discouraging insurance companies from reconsidering the claims. Let me ask you a question that may be way off the track, but – I'm here to answer questions. Isn't normally a statute of limitations issue a question of fact for a jury? Accrual questions usually are, and that's usually because you have difficulties about what did the plaintiff know and when did he know it. Here we have a much different circumstance. We have a determination made in 1981 and clearly communicated in a notarized letter. So there's no – No, that's yes. You say clearly communicated in a notarized letter. The question is what did the plaintiff know this meant and what was the effect of the letter. Did he know that he could never again, no matter what, change it because it was a final decision, or did he know it was a tentative decision? It was not a tentative decision. It was a final decision. It was a final decision. Barring? Unless there was more evidence. And the other thing that I think is interesting, Your Honor, is the only new evidence that's cited in this case is a 1991 MRI. So we're still talking about 18 years. No, but the question is, did it – was it a final decision that constituted a statute – that made the statute of limitations run? And is that a factual question for the jury, you say? And I think the answer is it was a final decision at the time it was entered. There is this issue that Judge Clifton has noted that because the policy continues into effect, the insurer had other obligations into the future. But that doesn't mean the classification wasn't final at the time that it was rendered. It was only in the sense that something else could happen. Well, what I'm saying is you're relying on the understanding of the plaintiff. And isn't that a factual question? No, it says, I understand. It uses that word. I'm sorry. I've well exceeded my time. Thank you, Your Honor. Thank you. Where we really part ways right at the beginning of this case is they keep talking about the classification. The plaintiff didn't sue for a wrongful classification, nor could he. There's not a cause of action for a wrongful coding of the claim. UDEM itself has argued that in case after case successfully around the country. We pointed out the brief in the Krasna case where they said damages are way too speculative. The claim's not over yet. Secondly, so we're not talking about a re-triggering of the statute of limitations. We're talking about when the cause of action accrues. It didn't accrue until they had a continuing duty. They agree they had a continuing duty because the claim is ongoing. He uses the example of a 21-year-old and how somehow that would be unfair to the company if it had to consider new medical information that came in 30 years into the life of the claim that showed, aha, it is an accident. Well, I submit that would be much more unfair to the insured than it would to the insurance company. What they've done, they admit they have a continuing duty, but they've created their own immunity from now looking at all of the evidence and making a fair, informed, objective decision because they're saying we have a continuing duty, but your statute started running 23 years ago. And as for the MRI being in 1991, that's not the controlling important case. It's important because it came after their having Selser sign a statement saying, I understand it's being classified as sickness, which gives rise to the question, why would he sign that if he thought that he's forever closing the door on this issue? He signed it because he's continuing to get the monthly benefit, and it just didn't matter for the next 23 years. As far as he knew. Well, that's a proposition that's hard to accept. He plainly understood there was a difference. He had switched the classification himself. And they came to him and said, no, no, no, no, no. Why he signed the notarized statement is kind of beyond me. But it can't be that, gee, it couldn't possibly ever make a difference, so why do I care? No. There's a lot to know about why he signed that statement, which is why we believe there are factual issues in the case. My point being, it was, again, a classification as their own claims manager testified it wasn't a decision that we're denying you benefits. There's a consequence if the classification remains unchanged when you get to the age 65. If he's still disabled, he hasn't gone back to another gainful occupation, which would have knocked him off claim anyway. And if there wasn't additional medical evidence making this sitting on the fence, we'll never know if it's a sudden onset clearer. But because he had 23 years to go, there just wasn't the other thing that he wrote that's in the file. He said that he felt some duress about having to sign that statement when she showed up at his house about that. Again, this, if this comes out the way that Unum is suggesting it should. Should the legal question be certified to the Arizona Supreme Court? Well, oddly enough, I agree. We know defendant's position is yes if we're going to lose. What's your position? Well, essentially the same. I mean, I felt in the case law is clear in Arizona on this point. And by the way, paragraph 14 of our complaint, we did make an allegation about the So I wanted to point that out, too. That's attached to the excerpts of record. Thank you. Thank you both very much. The case just argued will be submitted. Anybody want to agree? Either way. I don't know. It's up to you. But no, I don't care. That's the only cases we have left. We've got two long ones. All right. The court will take a brief morning break. All rise.
judges: Reinhardt, Clifton, Smith